Carmelo Etienne
MRN: 0000117344
ACCT: 5443163

# Sebastian River Medical Center
13695 US Highway 1, PO BOX 780838
Sebastian, FL 32958
772-589-3186

**Discharge Instructions for:**     **Etienne, Carmelo**
**Arrival Date:**     **Friday, February 16, 2018**

Thank you for choosing **Sebastian River Medical Center** for your care today. The examination and treatment you have received in the Emergency Department today have been rendered on an emergency basis only and are not intended to be a substitute for an effort to provide complete medical care. You should contact your follow-up physician as it is important that you let him or her check you and report any new or remaining problems since it is impossible to recognize and treat all elements of an injury or illness in a single emergency care center visit.

**Care provided by:**     Fernandez, John, MD
                            Gambino, Thomas, PA-C

**Diagnosis:**     Distal Phalanx Fracture

| DISCHARGE INSTRUCTIONS | FORMS |
|---|---|
| Finger Fracture | Medication Reconciliation Form |
| **FOLLOW UP INSTRUCTIONS** | **PRESCRIPTIONS** |
| Watson, Michael<br>   When: 2 - 3 days; Reason: Continuity of care | Norco |
| **SPECIAL NOTES** | |
| None | |

**X-RAYS and LAB TESTS:**
If you had x-rays today they were read by the emergency physician. Your x-rays will also be read by a radiologist within 24 hours. If you had a culture done it will take 24 to 72 hours to get the results. If there is a change in the x-ray diagnosis or a positive culture, we will contact you. Please verify your current phone number prior to discharge at the check out desk.

**MEDICATIONS:**
If you received a prescription for medication(s) today, it is important that when you fill this you let the pharmacist know all the other medications that you are on and any allergies you might have. It is also important that you notify your follow-up physician of all your medications including the prescriptions you may receive today.

**Patient Copy**

## PRESCRIPTIONS

Norco 5-325 mg Oral Tablet
Take 1 tablet by ORAL route every 6 hours As needed

772 480 0811          Exibit: M

# STATE OF FLORIDA
## DEPARTMENT OF CHILDREN AND FAMILIES
### OFFICE OF APPEAL HEARINGS

**Name:** Sophia Thelisma
**Address:** 1725 38th Street
Vero Beach FL 32960
Petitioner/Applicant/Recipient,

**Case No.** 2018 DP 28

VS.

**Appeal No.** _____

**Name:** DCF - Robert Shae, Tiffany Perry, Perinon Mitton, Tony V Colin Lee Shane, Ashley Delaney, Thomas Loveland, Tim Slaven, Owens Thomas
Respondent/Department/Agency, Sarah, Anna Weatherly, Heather Elliot, All DCF Agents Involved

**MOTION TO** Reinstate Full Costody to Sophia Thelisma
Federal Legal Action to be taken on all DCF Staff.

I am requesting the hearing officer take the following action(s) and the reasons for the action(s) are:

(1) GRANT FULL COSTODY OF 1st AND 2nd AND 3rd CHILD BACK TO (MOTHER) Sophia Thelisma AND (FATHER)(GAURDIAN) Carmelo Etienne BECAUSE THEY WERE ILLEGALLY TAKEN. I HAVE ALL PROOF. (IMMEDIATE ACTION TAKEN PLEASE!!! I LOVE + NEED MY KIDS) I WANT FEDERAL LEGAL ACTION TAKEN FOR THE ILLEGAL KIDNAPPING FOR OF ALL 3 CHILDREN SEPERATELY. BOTH FULL JAIL SENTENCES + HIGH FINES.

(2) DCF TO LOSE ALL IMMUNITY AGAINST LAWSUITS, FOR THE CONSPIRACY ILLEGAL KIDKNAPPING AND FOR THE VIOLATION OF CIVIL RIGHTS + VIOLATION OF FEDERAL LAW.

(3) FULL SENTENCE OF JAIL/PRISON TIME FOR EACH VIOLATION OF 1, 4, 5, 6, 9, 14 CONSTITUTIONAL AMENDMENT, BILL OF RIGHTS AND FEDERAL LAW TO PENELIZE THOSE ENVOLVED AND DISCOURAGE FUTURE FALSE ALLEGATIONS FROM OTHERS SEEKING REVENGE, AND OR UTILIZING ASSOCIATED PROGRAMS AND PERSONAL GAIN AND OR OF SAID ORGANIZATIONS.

ALL REASON APPLY 24/7

(4) $10 million EACH FAMILY MEMBER Compensation (ASAP) From DCF w/o Lawsuit (Federal) AS OFFICAL AGENCY • Violating 1, 4, 5, 6, 9, 14 Amendment FOR • Destroying Happy Home • Stress • Emotional Damage of Family • • Slandering of Name and Reputation • Illegally Put Sophia on News • Breaking Law • Abusing Power • Conspiracy • Treason • Interference with Custody • Discrimina • Interfering with Lawsuit • Family Endangerment • • Retaliation • Bias • Causing Broken Bones • Pain and Suffering • • Terrorism • Damaged Property/Camper • Mental Anguish • HIPAA Violation • Hate Crime • Racism

Respectfully submitted,

02/21/18  Sophia T.

(5) RELOCATION, NAME CHANGES, ANTI HARRASSMENT ORDER, CPO, ORAH + REPEAT VIOLENCE ORDER AGAINST ALL STATE + COUNTY OFFICALS, BECAUSE WE ARE BEING TARGETED IN PUBLIC AND STALKED AND DISCRIMINATED VBPD CPS AGAINST EVERYWHE

## CERTIFICATE OF SERVICE

I, _Sophia Tulisma_, certify that I have served each of the opposing parties or their counsel of record a copy of the foregoing in person, [✓] by mail, [✓] by fax, [✓] by email at the following _pleezybaron@gmail.com_ on this _21st_ day of _FEBRUARY_, 20_18_.

Respectfully,

_[signature]_

Acknowledged before me this 22nd of February, 2018.

_Tammie K. Hill_

**TAMMIE K. HILL**
MY COMMISSION # FF236690
EXPIRES June 03, 2019
(407) 390-0153  FloridaNotaryService.com

*need 10 million dollars or each family member.*

*72 480 0811*

**STATE OF FLORIDA
DEPARTMENT OF CHILDREN AND FAMILIES
OFFICE OF APPEAL HEARINGS**

*Exhibit A*

Name: Carmelo Etienne
Address: 1725 38 Street
Vero Beach Fl 32960
Petitioner/Applicant/Recipient,

Case No. 2018 DP 29
DCF Case 100 3830242

VS.

Appeal No. _____

Name: Tony V. Collins, Lee Shane, Robert Shae, Tiffany Peary, Ashley Delaney, Thomas Loveland, Perinon Milton, Owens Thomas, Tim Slaven.
Respondent/Department/Agency,

**MOTION TO** Return all of my Biological Children ASAP. Federal Legal Action to be Taken on all DCF Staff.

I am requesting the hearing officer take the following action(s) and the reasons for the action(s) are:

1) Reinstate full Custody to Carmelo Etienne. Grant full Custody of 1st and 2nd, 3rd Child Back to father Carmelo Etienne, Because they were Illegally taken. I Have Proof. (Immediate action taken Please!!! I Love my Kids) I want federal Legal Action taken for the Illegal Kidnapping for All 2 of my children seperately. Both Full Jail sentences + High Fines.

2) DCF to lose All Immunity Against Lawsuits, for the Conspiracy Illegal Kidnapping And for the violation of Civil Rights + violation of Federal Law.

3) Full sentence of Jail/Prison Time for each violation of 1, 4, 5, 6, 9, 14 Constitutional Amendment, Bill of Rights. And Federal Law to Penalize Those envolved. And Discourage future false Allegations. from others seeking Revenge. or utilizing associated Programs. Personal Gain of Said organization.

Respectfully submitted,
[signature]
02-21-18

Acknowledged before me this 22nd February, 2018
[signature] Tammie R. Hill

**TAMMIE K. HILL**
MY COMMISSION # FF236690
EXPIRES June 03, 2019

DCF is not Above The law.

DcF Case. 1008830242.

772 480 0811

## CERTIFICATE OF SERVICE

I, **Carmelo Etienne**, certify that I have served each of the opposing parties or their counsel of record a copy of the foregoing ☐ in person, ☑ by mail, ☑ by fax, ☑ by email at the following **Melobaron@gmail.com** on this **2018 OP 29** day of **2-21-18**, 20 **18**.

Respectfully,

I need Federal actions take against DCF Staff.
I need Federal action to reinstate my Custody Ash.

- DCF Broke Federal Laws.
- Pulling Strings for William Lee and Chief of Police David Currey.
- DCF in Vero Beach is Corrupted.
- I was Just in Jail illegally against my will on Bogas Charges.
- I Have the DCF workers and the Sheriff Officers (Shead) Searching my properties illegally
- I Have a Broken finger and lost a liter of Blood. After I put a suit out on friday 9 of feb. on feb 12 I got arrested for calling 911 in my own Home the illegal enter my property.
- I want full custody from Michelle L. Schermerhorn

DCF is Above Law, Again Victim.
Dcf Case. 10038302
DCF is not above the Law.

I want full Custody from DCF and Michelle Schermerhorn, Because I was head of household. Michelle Lynn Schermerhorn help DCF Conspired against me By tampering with evidence.

Cleaning up my spilt Blood from the Sheriff officer that came into my home illegally and assult me in front of my Children and michelle was there as a witness, DCF told her If she tell they will take the kids away from Her so She aide them in the conspiracy.

And By Coming to Court on me the next Day like we had family Problem.

I have evidence Suporting my Claim.

- I want to press Federal Charges on these Racist DCF Agents for putting my life in Danger By the Sheriff Officer and all the false aligations.

I. Carmelo Etienne was missing out the Country for a periode of 7 years as a minor from the age of ten till I was 17 years old why didn't DCF Come find me in Haiti when I was Born in the USA.

DCF Been Conspiring against me all my life.

DCF is Racist...
DCF is not Above the Law.
772 480 0811

# STATE OF FLORIDA
## DEPARTMENT OF CHILDREN AND FAMILIES
### OFFICE OF APPEAL HEARINGS

Name: Carmelo Etienne  
Address: 1725 38 Street  
Vero Beach FL 32960  
Petitioner/Applicant/Recipient,

Case No. 2018DP29  
DCF Case 100383024

VS.

Appeal No. _____

Name: Tony V. Collins, Lee Shane, Robert Shae, Tiffany Perry, Ashley Delaney, Thomas Loveland, Pernnon Milton, Owens Thom, Tim Slaven.  
Respondent/Department/Agency,

**MOTION TO** Return all of my Biological Children.

I am requesting the hearing officer take the following action(s) and the reasons for the action(s) are: Hate Crime Racist Conspiracy

- DCF illegally take my Childrens away from me, I want Federal action taken against DCF agents
- DCF illegally change my address when I my self recieve food stamps at 1725 38 St Vero Beach FL 32960.
- DCF violated my 1st, 4th, 5th, 6th, 7th, constitutional Rights.
- DCF got my finger Broken By the police with false aligation and conspired against my life To Have me Kill.
- DCF had me falsely Arrested. After I had already sue DCF and Florida

Respectfully submitted,

Acknowledged before me this 22nd day of February, 2018  
Tamrick K. Hill

TAMMIE K. HILL  
MY COMMISSION # F236690  
EXPIRES June 2019

Reinstate   Exhibit 8

# At-Risk Child Care Application and Authorization

**Authorization:** ☒ INITIAL AUTHORIZATION ☐ REDETERMINATION ☐ UPDATE
**If update, change in:** ☐ Hours ☐ Children ☐ Address ☐ Custody ☐ Eligibility Extension ☐ Termination of Care ☐ Worker/Unit

| | |
|---|---|
| ☐ St Lucie: Fax to 772-409-1968 | **FROM:** (Print Worker Name) (DCF employee) Adilene Hernandez |
| ☒ Indian River, Martin & Okeechobee: Fax to 772-223-3866 | **EMAIL ADDRESS:** adilene.hernandez@myflfamilies.com |
| | **Unit, Number & Address:** Unit 007; 1145 18th Pl |
| | **City, Zip Code:** Vero Beach, FL 32962 |

## SECTION A: CLIENT/FAMILY INFORMATION
*If address for parent/guardian is a P.O. Box, enter street address in "Comments" below.*

- Social Security No.: 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
- Last Name, First Name MI: Thelisma, Sophia (Parent)
- Date of Birth: 08/21/1991
- Gender: F
- Race: B

- Address: 4408 51st Ave, Vero Beach, FL 32960
- Day Time Phone No.: 772-213-2413

If there is NO spouse: Marital Status: ☒ Single ☐ Divorced ☐ Widowed ☐ Separated

## SECTION B: ELIGIBILITY

**I. Status:** ☒ Assistance   ☐ Non-Assistance   **Rilya Wilson Act:** ☐ Yes ☒ No

☒ **At Risk:** ● PI   ○ PS   ○ FC   ○ Diversion

☒ **Placement Location:** ● In Home   ○ Out of Home: Relative/Non-Relative   ○ Foster Care

**Custody:** ☐ DCF Placement & Care/Custody   ☒ Not Under DCF Placement & Care/Custody

**Medicaid Eligible:** ☐ Yes ☒ No

**II. FOR COALITION USE ONLY**
☐ Income Eligible <100%   ☐ Income Eligible 150% – 200%   ☐ TANF "Child Only"
☐ Income Eligible 100% <=150%   ☐ OTHER   ☐ TANF (Relative Caregiver)

**III. Primary Purpose of Care:** ☒ PROTECTION
**Secondary Purpose of Care:** ☒ Emergency ☐ Therapeutic Plan ☐ TANF At Risk (RCG)
☐ Employment ☐ Work Activity ☐ Education Activity (TED)

## SECTION C: AUTHORIZATION

Child care services are authorized for this client for approved activity(ies). The minimum hours of care per child includes [40] hours per week for reasonable transportation time. *Children authorized to receive care:*

| Name | SSN | Birth Date | Race/Gender | Min. Hours of Care/week | FAHIS Investigation Intake # | Center/Home Placed | Date Enrolled | Assessed Fee |
|---|---|---|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | B M | 40 | 2018-396284 | Cradle to Crayon 1.26.18 | | |
| Lakiyah Leslie Williams | [redacted] | [redacted] | B F | 40 | 2018-396284 | Cradle to Crayon 1.26.18 | | |

Gross Monthly Family Income: $500.00   (Attach Income Documentation, if available)
Care Authorization from 01/18/2018 through 03/18/2018   (Not to exceed a 6 month period)
Comments:

## SECTION D: AUTHORIZING SIGNATURE(S):
I hereby certify that the information provided above is correct.

- Applicant Signature: _____   Date: _____
- Authorizing Worker: [signature]   Date: 1/18/18
- Supervisory Approval: [signature]   Tel.: 772-253-1177   Date: 1/18/18
- Coalition: [signature]   Date: 1.26.18

THIS FORM IS VOID AFTER 10 CALENDAR DAYS FROM AUTHORIZATION DATE
CF-FSP 5002, PDF 11/2012   Copy To: Coalition, Applicant/Client, and Referring Agency

appt 1.26.18 @ 10 am

*Exibit 9*

*Page 7 to the Exibit.*

# RESIDENTIAL LEASE
## 2431 20th Avenue Vero Beach, Florida 32960

THIS LEASE (the "Lease") made this 7th day of July, 2016, between Yellow Kid, Inc., whose address is 851 SW 3rd Street Boca Raton, Florida 33486, hereinafter referred to as the "Landlord", and Sophia Thelisma, whose current address is 2431 20th Avenue, Vero Beach, FL 32960, hereinafter sometimes referred to as "Tenant."

### W I T N E S S E T H:

That in consideration of the covenants and conditions contained herein, the Landlord and Tenant do hereby agree as follows:

1. <u>Description of Premises</u>. Landlord leases to Tenant the premises located at 2431 20th Avenue Vero Beach, Florida 32960 (the Premises).

2. <u>Term</u>. The term of this Lease begins on July 01, 2016, and continues until July 31, 2016. Tenants may begin moving in personal possessions as early as July 01, 2016, and may begin occupation of the premises as early as July 01, 2016.

3. <u>Rent</u>. The rent under this Lease is Seven Hundred Fifty Dollars and no cents ($750.00) per month. Tenant shall pay the Landlord the rent on or before the 1st day of each month (hereinafter due date). The first month's rent payment in the amount of Seven Hundred Fifty Dollars and no cents ($750.00) is due on or before July 01, 2016.

Rent payments shall be mailed or delivered to William Lee and/or Amelia Lee at 851 SW 3rd Street Boca Raton, Florida 33486. Checks or money orders shall be made payable to Yellow Kid, Inc.

All rental payments shall be made to Landlord at the address specified above. If any rental payment due hereunder is not **received by** the Landlord at 851 SW 3rd Street Boca Raton, Florida 33486 by the 5th day of each month, a late charge of $50.00 shall be due and payable with such payment. It is the Tenant's responsibility to take into account mailing time. The Landlord shall not be obligated to accept any such late payment unless the late charge is tendered together therewith. Tenant agrees to pay, in addition to any late fee, a charge of $50.00 for each check which is returned for any reason as unpaid.

<u>Security Deposit</u>. On or before July 7, 2016, tenant will deposit with Landlord the sum of Two Hundred Fifty Dollars and no cents ($250.00) as security for the faithful performance by Tenant of the terms hereof. The Landlord shall hold the Security Deposit in a non-interest bearing account. This security deposit may be applied against any damages sustained by Landlord for Tenant's failure to pay rent, or for damages to the leased premises and/or to the furnishings and equipment, if any, belonging to Landlord on the leased premises and/or to any cleaning reasonably necessary if the

\10\280 - # 335434 v1                               1

leased premises are left unclean. Tenant acknowledges that the leased premises were clean prior to Tenant's occupancy. Landlord reserves the right to collect from Tenant the amount of any damages and/or unpaid rent which exceed the security deposit. The Security Deposit shall be refundable to the Tenant after Tenant vacates the premises so long as the same is delivered to the Landlord in substantially the same condition as on the commencement date of this Lease and provided the Tenant shall have otherwise fully complied with the terms and provisions of this Lease. Notwithstanding the foregoing, the Tenant hereby agrees that the Landlord may deduct from the Security Deposit a sum sufficient to have the carpets professionally cleaned. Otherwise, Landlord shall be entitled to apply the security deposit against any repairs or maintenance necessary to be done as a result of any damage done to the property by Tenant during the term of this Lease. Furthermore, any accrued late fees, returned check charges or other rents or sums due the Landlord under the Lease may be deducted from the security deposit. The security deposit shall be maintained, during the term of this Lease, in a non-interest bearing account.

4. <u>Additional Rent</u>. All charges, costs and expenses that Tenant assumes or agrees to pay hereunder, together with all interest and penalties that may accrue thereon in the event of the failure of Tenant to pay those items, and all other damages, costs, expenses, and sums that Landlord may suffer or incur, or that may become due, by reason of any default of Tenant or failure by Tenant to comply with the terms and conditions of this Lease, shall be deemed to be additional rent, and, in the event of nonpayment, Landlord shall have all the rights and remedies as herein provided for failure to pay rent.

5. <u>Taxes</u>. Landlord shall pay all real estate taxes and assessments that may during the lease term be imposed on, or arise in connection with the use of, the demised premises or any part thereof.

6. <u>Fire Insurance</u>. The Landlord shall, at its own cost and expense, procure, and at all times during the term of this Lease and any renewal or extension thereof, pay for and maintain fire and extended coverage insurance on the house (structure only) located upon the demised premises in an amount not less than one hundred percent (100%) of the full insurable value thereof, in a company licensed and authorized to do insurance business in the State of Florida. Tenant shall provide its own fire insurance to cover personal property belonging to Tenant.

7. <u>Tenant's Property</u>. Any property brought onto the demised premises by the Tenant shall be at the sole risk of the Tenant. Tenant shall maintain Renter's insurance for liability coverage and for coverage on its property brought onto the premises. By signing this Lease the Tenant agrees that upon surrender or abandonment of the demised premises, as defined by Florida Statutes, the Landlord shall not be liable or responsible for the storage or disposition of the Tenant's personal property.

\10\280 - # 335434 v1                 2

8. **Quiet Enjoyment**. Landlord covenants that on paying the rent and performing the covenants herein contained, Tenant shall peacefully and quietly have, hold, and enjoy the demised premises for the agreed term.

9. **Use of Premises**. The demised premises shall be used and occupied by Tenant exclusively as a private, single family residence, and neither the premises nor any part thereof shall be used at any time during the term of this Lease by Tenant for the purpose of carrying on any business, profession, or trade of any kind. Provided, however, the Tenant shall be allowed to have a home office on the Premises. Tenant shall comply with all the laws, ordinances, rules, and orders of Homeowner's Association, if applicable, and appropriate governmental authorities affecting the cleanliness, occupancy, and preservation of the demised premises, and any sidewalks connected thereto, during the term of this Lease. Tenant shall comply with all deed restrictions affecting the property, if any. Tenant shall not allow any nuisance on the premises.

10. **Number of Occupants**. The leasehold premises shall be continually occupied by one unit comprised of a maximum of One adult and two children and no others. Occupancy of the residence by any number of persons other than those set forth above must be with the written consent of the Landlord.

11. **Condition of Premises**. Tenant acknowledges that Tenant has examined the demised premises, including the grounds and the house and improvements, and that they are, at the time of this Lease, in good order, repair, and in a safe, clean, and tenantable condition. Upon check in at the commencement of the lease and checkout at the expiration of the lease, the Tenant and the Landlord shall sign a property condition report reflecting an inventory of the Landlord's personal property located in the premises and the correlating condition thereof.

12. **Assignment and Subletting**. Tenant shall not assign this Lease or sublet the premises or any part thereof without the prior written consent of Landlord. Consent by Landlord to one assignment or subletting shall not be deemed to be consent to any subsequent assignment or subletting. An assignment or subletting without the prior written consent of the Landlord, or an assignment or subletting by operation of law, shall, at the Landlord's option, be considered a default under this Lease.

13. **Maintenance, Repairs or Alterations**. Tenant acknowledges that the premises, including the improvements, appliances and systems contained therein, are in good order and repair, unless otherwise indicated on the Property Condition Report, within five (5) days after Tenant is entitled to take possession. The taking of possession of the premises by the Tenant shall be conclusive evidence that the premises were in all respects in good and satisfactory condition, acceptable to the Tenant at the time of possession, except as to any matters contained on the property condition report. Tenant shall, at Tenant's expense, at all times, maintain the premises in a clean and sanitary manner including all equipment and appliances therein. At the expiration of the Lease term, Tenant

\10\280 - # 335434 v1                                   3

shall surrender the premises in as good a state and condition as they were at the commencement of this Lease, except reasonable use and wear thereof and damages by the elements.

The Tenant agrees to use due care in the use of the premises, the appliances therein, and all other parts of Landlord's property, to give notice to Landlord or his agent of the need for repair thereof, and to pay all repairs to the premises, its contents, and to all other parts of Landlord's property which are necessitated by the Tenant, members of the Tenant's family, visitors or any invitee.

Regarding the appliances, tenant shall be responsible for ensuring appliances are kept clean and sanitary and used in the manner in which they were intended to be used. Tenant shall not be responsible for the cost of fixing said appliances should said appliances break or quit working during the lease term. The cost of fixing and or repairing said appliances shall be the responsibility of the landlord so long as the reason for said repair is not the result of negligence by the tenant. All repair items less than One Hundred Twenty-Five Dollars and no cents ($125.00) will be the responsibility of the Tenant.

14. <u>Maintenance of Grounds and Landscape</u>. Tenant shall keep grounds clear of rubbish. In the event the Tenant fails to properly maintain the grounds and, the Landlord shall provide written notice to the Tenant specifying the manner in which the Tenant has failed to comply with the provisions of this paragraph and the action required for compliance. Tenant shall be responsible for maintaining landscape and lawn.

15. <u>Alterations and Improvements</u>.

(a) Tenant shall make no alteration to the buildings or construct any building or make other improvements on the demised premises without the prior consent of Landlord. The term alterations include, without limitation, any moving or installation of curtain rods, shelves or other structures, any painting or wallpapering or any other changes in the premises. All alterations, changes, and improvements built, constructed, or placed on the demised premises by Tenant, with the exception of movable personal property, shall, unless otherwise provided by written agreement between Landlord and Tenant, be the property of Landlord and remain on the demised premises at the expiration or sooner termination of this Lease.

(b) No additional bolts, locks or other safety attachments shall be affixed to any door, or shall any lock be changed by Tenant, without the prior consent of Landlord. Additional keys other than those first delivered to Tenant shall be paid for by Tenant. All keys shall be returned to Landlord on termination of this Lease.

(c) Tenant shall not destroy, deface, damage, impair or remove any part of the premises or property belonging to landlord nor permit anyone to do so.

16. **Construction Liens.** The Tenant shall not do or suffer anything to be done whereby the land and building of which the demised premises are a part may be encumbered by any construction or mechanic's lien, and shall, whenever and as often as any mechanic's lien is filed against the said land and building purporting to be for labor or materials furnished or to be furnished to the Tenant, discharge the same of record within ten (10) days after the date of filing. Notice is hereby given that the Landlord shall not be liable for any labor or materials furnished or to be furnished to the Tenant upon credit, and that no mechanic's or other lien for any such labor or materials shall attach to or affect the reversionary or other estate or interest of the Landlord in and to the land and building of which the premises herein demised are a part. If requested by Landlord, a memorandum of this Lease shall be recorded giving this notice.

17. **Damage to Premises.** If the demised premises are damaged by fire or taken by eminent domain, Landlord, at its option, may terminate this Lease without liability for the remainder of the term. Any condemnation award shall belong exclusively to the Landlord. If premises are uninhabitable Tenant shall not be liable for rent while the premises are uninhabitable.

18. **Dangerous Materials.** Tenant shall not keep or have on the leased premises any article or thing of a dangerous, inflammable, or explosive character that might unreasonably increase the danger of fire on the leased premises or that might be considered hazardous or extra hazardous by any responsible insurance company.

19. **Indemnity.** The Tenant shall indemnify, save and hold harmless the Landlord from and against any and all claims, or liability for injury or damage to any person or property occurring in or about the premises occurring during the term of this Lease, when such injury or damage shall be caused in whole or in part by the act, neglect, fault of or omission of any duty of same by Tenant, its agents, servants, employees and invitees. Nothing contained herein shall absolve Landlord for any injuries or damage caused by Landlord's negligence or the negligence of Landlord's agents, servants or employees.

20. **Utilities.** Tenant shall be responsible for arranging for and paying for utility services required on the premises, including but not limited to telephone, water, electricity and cablevision.

21. **Maintenance and Repair.** Tenant will, at Tenant's sole expense, keep and maintain the leased premises and appurtenances in good, clean and sanitary condition and repair during the term of this Lease and any renewal thereof except as provided herein. Without limiting the foregoing, Tenant shall keep all plumbing fixtures clean and sanitary and in repair.

22. **Inspection of Premises.** Tenant hereby gives the Landlord or Landlord's agent, upon reasonable notice, consent to enter the premises, from time to time, in order to inspect the premises, make necessary or agreed upon repairs, decorate, make alterations

or improvements, supply agreed services, or exhibit the premises to prospective or actual tenants, purchasers, mortgages, appraisers, workmen or contractors. The Landlord may enter the premises at any time for the protection and preservation of the premises or in the case of emergency.

23. <u>Display of Signs</u>. N/A

24. <u>Subordination of Lease</u>. This Lease and Tenant's leasehold interest hereunder are and shall be subject, subordinate, and inferior to any liens or encumbrances now or hereafter placed on the demised premises by Landlord, all advances made under such liens or encumbrances, the interest payable on any such liens or encumbrances, and any and all renewals or extensions of such liens or encumbrances.

25. <u>Holdover by Tenant</u>. Should Tenant remain in possession of the demised premises without the consent of Landlord after the natural expiration of this Lease, the Landlord may recover possession of the dwelling unit in the manner prescribed in Florida Statutes, and the Landlord shall be entitled to double the amount of rent for the period during which the Tenant refuses to surrender possession.

26. <u>Surrender of Premises</u>. At the expiration of the lease term, Tenant shall quit and surrender the premises hereby demised in as good state and condition as they were at the commencement of this Lease, except reasonable use and wear thereof and damages by the elements not due to Tenant's negligence.

27. <u>Default</u>.

(a) If the Tenant fails to comply with the provisions of this lease or any obligation imposed upon Tenant by law, other than a failure to pay rent, the Landlord may:

(i) If the non-compliance is of a nature that the Tenant should be given an opportunity to cure the noncompliance pursuant to Florida Statutes 83.56(2)(b), deliver a written notice to the Tenant at the premises specifying the non-compliance and indicating that if the non-compliance is not corrected within 7 days from the date the written notice is delivered, the lease will be terminated.

(ii) If the non-compliance is of such a nature that the Tenant should not be given an opportunity to cure the non-compliance pursuant to Florida Statutes 83.56(2)(a), deliver a written notice to the Tenant at the premises specifying the non-compliance and indicating the termination of this lease.

(b) If the Tenant fails to pay rent when due and the default continues for three (3) days after delivery of written notice by the Landlord at the premises for payment of the rent or possession of the premises, the Landlord may terminate the rental agreement.

\10\280 - # 335434 v1    6

(c) The delivery of the written notices required by subsections (a) and (b) shall be by mailing or delivery of a true copy thereof to the premises or, if the Tenant is absent from the premises, by leaving a copy thereof at the residence.

(d) In addition to the foregoing, in the event the Tenant fails to comply with the provisions of this Lease or any obligation imposed upon Tenant by law, the Landlord shall have all the rights and remedies available at law or in equity.

28. **Landlord's Remedies Upon Default.** If the Tenant fails to comply with any of the covenants, promises, or conditions of this Lease Agreement for a period of ten (10) days, then the Landlord, upon such default, may exercise one or more of the following remedies:

(a) Terminate Tenant's right to possession under this Lease and re-enter and retake possession of the premises and relet or attempt to relet the premises on behalf of Tenant at such rent and under such terms and conditions as Landlord may deem best under the circumstances for the purpose of reducing Tenant's liability and Landlord shall not be deemed to have thereby accepted a surrender of the premises. Tenant shall remain liable for all rents due under this Lease and for all damages suffered by Landlord because of Tenant's breach of any of the covenants of this Lease. At any time during such repossession or reletting, Landlord may, by delivering written notice to Tenant, elect to exercise its option under the following subparagraph to accept a surrender of the premises, terminate and cancel this Lease, and retake possession and occupancy of the premises.

(b) Declare this Lease to be terminated, ended and null and void, and re-enter upon and take possession of the premises, whereupon, the term hereby granted and all right, title and interest of the Tenant in the premises, shall end. Such termination shall be without prejudice to Landlord's right to collect from Tenant any rental which has accrued prior to such termination together with all damage suffered by Landlord because of Tenant's breach of any covenant under this Lease.

(c) Declare the entire remaining unpaid rent for the balance of this Lease to be immediately due and payable forthwith, and may, at once, take action to recover and collect same either by distress or otherwise.

(d) Exercise any and all rights and privileges that Landlord may have under the laws of the State of Florida.

29. **Waiver.** If the Landlord accepts rent with actual knowledge of a noncompliance by the Tenant, or accepts performance by the Tenant of any other provision of the rental agreement that is at variance with its provisions, or if the Tenant pays rent with actual knowledge of a noncompliance by the Landlord or accepts performance by the Landlord of any other provision of the rental agreement that is at

variance with its provisions, the Landlord or Tenant waives its right to terminate the rental agreement or to bring a civil action for that noncompliance, but not for any subsequent or continuing noncompliance.

30. **Attorney's Fees.** In the case of the failure of either party hereto to perform and comply with any of the covenants and conditions hereof within the time herein specified, and the said rent, or damages for the breach of any covenant or condition, is enforced or collected by suit or through an attorney at law, whether suit be brought or not, the party so failing to perform and comply hereby agrees to pay to the other party hereto a reasonable sum of money for attorneys' fees, together with the costs, charges, and expenses of such collection or other enforcement of rights in any suit, or otherwise. The prevailing party in any such litigation shall be entitled to attorneys' fees and costs.

31. **Abandonment.** An abandonment of the premises shall be deemed to be a material default of this Lease. For the purposes of this Lease, the premises shall be deemed to have been abandoned if Tenant is absent from the premises for fifteen (15) days and the rent is not current and the Tenant has not notified Landlord of Tenant's intended absence. If Landlord's right of reentry is exercised following abandonment of the premises by Tenant, then Landlord may consider any personal property belonging to Tenant and left on the premises to also have been abandoned. When personal property remains on the premises after a tenancy has expired or terminated, and the premises have been vacated by Tenant, Landlord shall give written notice to such Tenant and to any other person Landlord reasonably believes to be the owner of the property. Such notice shall comply with Florida Statutes, Section 715.104. Where the value of the property deemed abandoned is reasonably believed to be of a value less than Five Hundred Dollars ($500.00) and Landlord has provided notice as prescribed in Florida Statutes, Section 715.104, Landlord may dispose of all such personal property in any manner Landlord shall deem proper and Landlord is hereby relieved of all liability for doing so. If the value of the property deemed abandoned is reasonably believed to be in excess of Five Hundred Dollars ($500.00), Landlord shall dispose of the property in the manner prescribed by Florida Statutes, Sections 715.10-715.111.

32. **Liability of Tenant.** If this Lease Agreement is executed by more than one Tenant, the responsibilities and liabilities herein imposed shall be considered and construed to be joint and several, and the use of the singular shall include the plural.

33. **Binding Effect.** The covenants and conditions herein contained shall apply to and bind the heirs, legal representatives, and assigns of the parties hereto, and all covenants are to be construed as conditions of this Lease.

34. **Law.** This Lease shall be governed by the laws of the State of Florida.

\10\280 - # 335434 v1                                  8

35. <u>Time is of the Essence</u>. It is agreed and understood between the parties that time is of the essence and that the Tenant shall be required to comply with each and every term and condition of this Lease Agreement in a timely manner.

36. <u>PETS</u>. Pets are not allowed without the written consent of the Landlord. A Yorki dog weighing less than five pounds is permitted to reside on the premises.

37. <u>Notice to Landlord</u>. Notices of emergencies of any kind shall be provided to the Landlord as follows:

> William or Amelia Lee
> 851 SW 3rd Street
> Boca Raton, Florida 33486
> (561) 373-9453 (William Lee's mobile phone)

All other notices to the Landlord shall be in writing to William or Amelia Lee, 851 SW 3rd Street Boca Raton, Florida 33486.

38. <u>Radon Gas Notification</u>. The following notification is required by Section 404.056(6), Florida Statutes (1997):

> RADON GAS: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

39. <u>No Other Representations</u>. No representations or promises shall be binding on the parties hereto except those representations and promises contained herein or in some future writing signed by the party making such representations or promises.

40. <u>Entire Agreement</u>. This Lease contains the entire agreement of the parties and no representations, inducements, promises or agreements, oral or otherwise, between the parties not embodied herein shall be of any force or effect. No failure of the Landlord to exercise any power given the Landlord hereunder, or to insist upon strict compliance by the Tenant of any obligation hereunder and no custom or practice of the parties at variance with the terms hereof shall constitute a waiver of the Landlord's right to demand exact compliance with the terms hereof.

41. <u>Facsimile Signatures</u>. Facsimile signatures shall be considered original signatures for the purposes of execution of this Lease.

42. <u>Smoking</u> – No smoking will be allowed within the interior of the unit. Smoking within the interior of the unit will result in an immediate forfeiture of the deposit. Porches and Screened porches shall not constitute the interior of the unit for this paragraph.

43. <u>Additional phone or cable jacks</u> – Tenant at tenants' expense shall be allowed to install extra phone or cable jacks throughout the unit. Tenant is responsible for any damage to the unit that results from the installation of said jacks.

IN WITNESS WHEREOF, the parties have executed this Lease at Indian River County, Florida, the day and year written below.

Signed:

LANDLORD:

_____  7/7/16
William Lee                      Date
President
Yellow Kid, Inc.

TENANTS:

_____  7/7/16
Sophia Thelisma                  Date

*Exhibit "(a)"*



**1055 20th St**
**Vero Beach, FL**
**32960**
**772-978-4600**

# VERO BEACH PD
## INVOLVEMENTS REPORT

Master Number: 152936
Date: 01/26/2018
Page: 1 of: 3

| Field | Value | | Date |
|---|---|---|---|
| Legal Name | THELISMA, SOPHIA, | Master No. ***** | 05/25/2017 |
| Outdated/Alias | THELISMA, SOPHIE, | | 05/25/2017 |
| Home Address | 2431 20TH AVE VERO BEACH FL 32960 | Phone (772)584-6845 | 11/21/2016 |
| Home Address | 3405 3RD ST VERO BEACH FL 32968 | Phone | 05/18/2016 |
| Home Address | 1826 41ST AVE C VERO BEACH FL 32960 | Phone (772)332-2163 | 10/30/2014 |
| Home Address | 1422 16TH ST 28 VERO BEACH FL 32960 | Phone (772)332-2163 | 08/27/2014 |

SSN _____ Race BLACK   Height ____ Weight ____ Eyes BROWN   Glasses NONE
Sex F   Build HEAVY   Age 25   DOB 08/21/1991   Teeth NORMAL   Facial Hair NONE   Handed UNKNOWN
Skin DARK BROWN   Hair BLACK   Hair Length ABOVE THE EAR   Hair Style PONYTAIL
Ethnicity AFRICAN   Marital UNKNOWN   Speech NORMAL   Demeanor CALM
Place of Birth _____   Resident Status FULL YEAR   Occupation _____
State ID _____   Local ID _____   FBI No. _____
Unique ID _____   MugShot ID No. _____

## Involvements

Report Type: CASE
Report No.: 2014002191
Report Date: 08/26/2014
Involvement: COMPLAINANT
Location: 1422 16TH ST
Age at Event:
Officer Name: EGGERS RYAN
Description: PROPERTY LOST/FOUND  *Eggers Ryan GUN*
Violation: 2820

Report Type: CASE
Report No.: 2014002191
Report Date: 08/26/2014
Involvement: CASE PROPERTY OWNER
Location: 1422 16TH ST
Age at Event:
Officer Name: EGGERS RYAN
Description: *EGGERS RYAN Gun Found*
Violation: NA

Report Type: CASE
Report No.: 2014002766
Report Date: 10/22/2014
Involvement: COMPLAINANT
Location: 1826 41ST AVE
Age at Event:
Officer Name: CROWLEY, SEAN
Description: INFORMATION
Violation: 2893