UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-14061-CIV-MARTINEZ/MAYNARD

CARMELO ETIENNE AND
SOPHIA THELISMA,

    Plaintiffs,

v.

FLORIDA DEPARTMENT OF CHILDREN & FAMILIES as well as
THOMAS LOVELAND, ASHLEY DELANEY, MILTON PERINON,
TIFFANY PERRY, TIM SLAVEN, OWEN THOMAS, AND
ROBERT SHAE, all of the Fla. Dept. of Children & Families;

PATRICK O'BRIAN, Assistant State Attorney;

JUDGE ROBERT PEGG AND JUDGE VICTORIA GRIFFIN;

et al.,

    Defendants.

_____/



FILED by _____ D.C.

MAY 07 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

### REPORT AND RECOMMENDATION ON
### PLAINTIFFS' AMENDED COMPLAINT (DE 44) AND ON PENDING MOTIONS

**THIS CAUSE** comes before this Court upon an Order of Reference (DE 23) and the above Motions. Having reviewed the Motions as well as the complete record to-date, this Court recommends as follows:

### BACKGROUND

1.  The Plaintiffs bring suit against a very wide range of persons and entities, too many to list out here. Their core grievance remains the same, however, and it concerns the placement of Sophia Thelisma's children in DCF's custody. The

Plaintiffs have filed multiple amendments to their Complaint, the most recent of which is found at DE 44. Although the Complaint at DE 44 is the operative pleading by virtue of being the most recent, this Court takes into consideration all of the Complaint's preceding versions. This Court therefore considers here the Plaintiffs' cumulative arguments. This Court also reviews each and every filing that the Plaintiffs have submitted through the date of this ruling.

2.   From them, this Court derives the following background: It begins in January 2017 when law enforcement assisted the Florida Department of Children & Families ("DCF") with an investigation of child neglect. They were acting on a report that Carmelo Etienne was a drug dealer and that Sophia Thelisma was heavily using drugs. There was concern that both parents' activities were negatively affecting the children's well-being. Friends and family of Sophia Thelisma also were concerned that Carmelo Etienne had socially isolated her from them. Upon investigation both parents denied all of the drug-related allegations. They suspected that the Vero Beach Police Department had reported those false allegations to DCF as a way to get Carmelo Etienne into trouble. The investigating authorities observed the children to show no signs of abuse or neglect. The investigation therefore was closed.

3.    Over the course of 2017 and the start of 2018, Carmelo Etienne began accusing his landlord of unsafe living conditions including the presence of lead paint. The Health Department investigated and issued a report. Presumably the Health Department found nothing of concern. The Plaintiffs criticize the Health Department's report for various reasons.

4.    On January 25, 2018 Carmelo Etienne reported the theft of personal property. He accuses the responding Vero Beach police officers of not taking his theft report seriously. His grievance expanded to include customer service employees at the Vero Beach Police Department headquarters and its Internal Affairs' officers whom he also did not feel took his concerns seriously.

5.    Around the same time, in January 2018, DCF opened a new investigation into child abuse and neglect. They were acting on the belief that a parent was "violent, impulsive, or acting dangerously in ways that seriously harm the child or will likely seriously harm the child." They acted out of concern for impending danger. Then in February 2018 DCF filed Shelter Petitions (Case Nos. 31-2018-DP-000028/29) in state court to remove five children from Carmelo Etienne. The case ending in ---28 concerns Sophia Thelisma's three children one of whom Carmelo Etienne is the natural father. The Shelter Order does

not permit Sophia Thelisma to contact the children. It is the removal of these children that is the primary subject of the Plaintiffs' lawsuit.

6.    By contrast the case ending in ---29 concerns two children of whom Carmelo Etienne is the natural father and a third party is the natural mother. This Shelter Order gave custody to the natural mother (who is not party of this federal lawsuit) and barred Carmelo Etienne from contacting them. That Shelter Order also required Carmelo Etienne to undergo a psychological evaluation. Whether he complied with the term of that state court order is unknown.

7.    The state court rendered Shelter Orders in both cases. The one at issue here authorized law enforcement to assist DCF to take custody of Sophia Thelisma's children and to place them in DCF's care. That order authorized law enforcement to use reasonable force to accomplish the removal. Enforcement of that Shelter Order resulted in Carmelo Etienne's arrest. The arrest affidavit recalls how Carmelo Etienne became belligerent and tried to hinder the removal, included making multiple calls to 9-1-1. As a result Carmelo Etienne was arrested for resisting arrest without violence, interference with child custody, and abuse of 9-1-1. The state in turn charged him with five counts of abuse of 9-1-1 (for reporting false information and for using

it for a purpose other than obtaining public safety assistance). That state criminal case is 31-2018-MM-000578A. The Information was rendered on March 22, 2018. The current state of that criminal case is unknown.

8.   The Shelter Hearing for the first dependency case took place on February 13th. Neither Sophia Thelisma nor Carmelo Etienne appeared, and the children's whereabouts were unknown. Law enforcement began searching for Sophia Thelisma and the children out of concern for their safety. Soon thereafter Sophia Thelisma brought the children to the sheriff's office, and DCF took physical custody of them.

9.   Carmelo Etienne and Sophia Thelisma reacted to the removal of the children by instituting a variety of legal proceedings. They petitioned the DCF Office of Appeal Hearings to return full custody of Sophia Thelisma's three children. They filed a civil case in Florida state court seeking the same relief and asking the State Attorney's Office to investigate. That state civil case is 2018-CA-000102. They filed seventeen requests for protective orders in that case, all of which the presiding state court judge denied.

10.   Thereafter Carmelo Etienne filed an Emergency Motion for Child Pick-Up in the state dependency cases. The presiding state court judge denied that motion on March 29, 2018. On April

3, 2018 the presiding state court judge amended that order. The
Plaintiffs proffer that Amended Order at DE 37. It recounts some
of the dependency case's history (which this Court incorporates
above). In that Amended Order the presiding judge also (1)
affirmed the validity of the underlying order that gave DCF
custody of the children and (2) affirmed the precedence of the §
39.013(4) Shelter Order over any other civil court order.

11. Lastly that Amended Order states that the trial in
both dependency cases had been continued to April 30th. It is
unknown whether that trial took place as scheduled and if so,
its results. The most recent action taken in the state court
cases that is mentioned in the filings is a Writ of Mandamus
that Carmelo Etienne filed on April 6, 2018.

12. The instant federal lawsuit is another reaction to the
children's removal. The Plaintiffs sue all those involved in
that proceeding including DCF, itself; DCF's several agents and
their supervisors; and the presiding judge. The Plaintiffs also
sue those involved in the arrest and criminal charges that
resulted from the enforcement of the Shelter Order. The
Plaintiffs also sue those involved in the landlord dispute and
theft accusation. The Plaintiffs contend that removal of the
children was done in retaliation for or to otherwise hinder
those two matters.

13.   The Plaintiffs challenge the Shelter Orders for a variety of reasons. Initially they argued that there was no valid reason to remove the children, and they alleged a racist conspiracy and/or retaliatory motives. By time of their Amended Complaint at DE 17, the nature of their argument changed to one of a treaty violation. Since the filing of that pleading at DE 17, the Plaintiffs claim Moroccan and/or Moorish citizenship, and they argue that the removal proceeding violated the friendship treaty between the United States and Morocco.

## DISCUSSION

14.   This Court begins by noting that a federal court is a court of limited jurisdiction. The law therefore requires a federal court to ensure that it has jurisdiction to hear a lawsuit. "If the court determines at any time that it lacks subject-matter jurisdiction," then Rule 12(h)(3), Fed.R.Civ.P., requires the court to "dismiss the action." This Court undertakes that jurisdictional review here.

15.   A Rule 12(h)(3) review is warranted because the Plaintiffs' pleadings raise a jurisdictional defect: a federal court may not review a state court or state administrative proceeding. The Plaintiffs in effect ask this Court to serve as a super-appellate court over those state court proceedings and to vacate those decisions with which they disagree. This federal

court may not do that. See Dempsey v. Massachusetts, 959 F.2d
230 (1st Cir. 1992) and Atlanta Bowling Center, Inc. v. Allen,
389 F.2d 713, 716 (5th Cir. 1968). Should they disagree with the
outcome of a state court (or state administrative proceeding),
the proper course of action instead is for them to appeal to the
state appellate court (or other proper review body).

16.   This same principle is expressed in the Rooker-Feldman
doctrine which likewise bars this Court's consideration of the
Plaintiffs' federal lawsuit. The United States Supreme Court re-
visited the Rooker-Feldman doctrine and clarified its scope in
the case of Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 125
S.Ct. 1517 (2005). There the Supreme Court explained that the
doctrine applies to "cases brought by state-court losers
complaining of injuries caused by state-court judgments rendered
before the district court proceedings commenced and inviting
district court review and rejection of those judgments." Id. at
1521-22. The Plaintiffs' federal lawsuit falls within this
definition. The Plaintiffs are party to state court proceedings
where they should have---and actually did---raise the same
arguments and objections that they do here. The present federal
litigation constitutes an impermissible re-litigation of the
state court proceedings. "Under the Rooker-Feldman abstention
doctrine, '[i]t is well-settled that a federal district court

lacks jurisdiction to review, reverse, or invalidate a final state court decision.'" Harper v. Chase Manhattan Bank, 138 Fed.Appx. 130, 132 (11th Cir. 2005).

17.  In the case of Martyak v. Martyak, 378 F.Supp.2d 1365 (S.D. Fla. 2005), this Court found the Rooker-Feldman doctrine to deprive the federal court of jurisdiction over the plaintiff's attempted "removal" of his state court litigation. That plaintiff in effect was seeking to re-litigate his state court divorce in federal court. The Rooker-Feldman doctrine applies with equal force here where the Plaintiff seeks federal court review of state court proceedings concerning Florida's family and dependency laws and of state administrative proceedings concerning housing codes. Both are subjects of Florida law, moreover, and lie within the general subject matter jurisdiction of Florida's courts. They therefore should be litigated there. To the extent that the state court proceedings remain open and ongoing, then the doctrine of Younger Abstention presents a similar bar. See Daniels v. Geraldi, 578 Fed.Appx. 811 (11th Cir. 2014).

18.  The Plaintiffs' Complaint fails for additional reasons. First, the judges that the Plaintiffs sue are entitled to judicial immunity. This immunity is absolute if the judges dealt with the Plaintiffs in a judicial capacity and with some

basis for jurisdiction, see Lawal v. Fowler, 196 Fed.Appx. 765, 767–68 (11th Cir. 2006), as was the case here. Even without immunity, this Court lacks jurisdiction. The Plaintiffs' lawsuit against the judges is the equivalent of his request for federal court review of the state court proceedings. If the Plaintiffs' disagree with the state court judges' decisions, then the proper avenue of relief is to appeal to the state appellate court.

19.   Second, prosecutorial immunity bars the Plaintiffs from suing those Defendants who are assistant state attorneys. Prosecutors are immune from suit, and that immunity covers the full scope of their work. The immunity is absolute. See Rowe v. City of Ft. Lauderdale, 279 F.3d 1271, 1279 (11th Cir. 2002) and Jones v. Cannon, 174 F.3d 1271, 1281 (11th Cir. 1999). It also is well-established in the case law that a private citizen plaintiff may not use a court to direct a criminal investigation or prosecution of another. See Otero v. U.S. Attorney General, 832 F.2d 141 (11th Cir. 1987) and U.S. v. Jones, 368 Fed.Appx. 959 (11th Cir. 2010). See also, Brewer v. U.S. Attorney's Security, 2015 WL 9942594 (N.D.Fla. 2015). Therefore, to the extent the Plaintiffs seek to compel criminal investigation or prosecution of any of the Defendants through injunctive or mandamus relief, this Court may not act.

20.    Third, there is Florida's sovereign immunity. The case law is clear about the general applicability of § 768.28(18), Fla. Stat., and the bar to suing the State of Florida (or here, its DCF agency) in this federal court. See Gamble v. Florida, 779 F.2d 1509 (11th Cir. 1986), Williams v. Robbins, 153 Fed.Appx. 574 (11th Cir. 2005), Yawn v. Sec'y, Fla. Dep't of Corr., 2017 WL 2730671 (N.D.Fla. 2017). Nor may the Plaintiff sue DCF or DCF agents' supervisors solely in their role as investigating agents' employer. See Whittington v. Town of Surfside, Fla., 269 Fed.Appx. 918, 921 (11th Cir. 2008). To the extent the Plaintiffs sue law enforcement or other officers, the Plaintiff would have to overcome qualified immunity protection. See Gennusa v. Canova, 748 F.3d 1103, 1109 (11th Cir. 2014).

21.    Since filing their original Complaint the Plaintiffs expanded the scope of their lawsuit beyond the core child removal dispute to include customer service employees at various businesses and establishments whom Carmelo Etienne has encountered since then. The Plaintiffs state no viable cause of action on these tangential grievances.

22.    This lawsuit therefore should be dismissed in full. Nor does this Court see any basis for giving the Plaintiffs' leave to amend their Complaint again. Such leave would be futile given the clear legal bars to proceeding with this lawsuit.

23.   The DCF Defendants and two of the judge Defendants also complain about legally defective service of process. They make a limited appearance to raise that argument. However, because this Court finds that this lawsuit should be dismissed with prejudice, this particular argument is moot. This Court need not address the defective service of process issue.

**ACCORDINGLY**, this Court recommends to the District Court that the Plaintiff's Amended Complaint (DE 44) be **DISMISSED** pursuant to Rule 12(b)(1) & (h)(3), Fed.R.Civ.P. This Court likewise recommends that the Motion to Dismiss (DE 41) be **GRANTED**. Given the nature of the defects and the futility of amending the Complaint to correct them, this Court recommends that the Amended Complaint (DE 44) be dismissed with prejudice and without leave to amend. Cf. Silva v. Bieluch, 351 F.3d 1045, 1048–49 (11th Cir. 2003). This Court therefore recommends that the Plaintiffs' various pending Motions (which currently are DE 21, 27, 42, 43, 46–49 & 52) all be **DENIED** as moot. Likewise this Court recommends that the DCF Defendants' Motion to Quash Service of Process (DE 34) be **DENIED** as moot.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Jose E. Martinez, the United States District Judge assigned to this case. Failure to file timely

objections shall bar the parties from a de novo determination by the District Court of the issues covered in this Report and Recommendation and bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745, 749–50 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988).

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this _____ day of May, 2018.

SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE

CC:  Counsel of Record (via CM/ECF NEF)

Carmelo Etienne, pro se
1725 38th St.
Vero Beach, FL  32960

Sophia Thelisma, pro se
1725 38th St.
Vero Beach, FL  32960

13 of 13